IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Gregory Kleynerman,          Case No. 18-26659-beh

          Debtor.          Chapter 7

**DECISION AND ORDER DENYING CREDITOR'S
MOTION FOR RULE 2004 EXAMINATION**

      A creditor urges that he is "just seeking transparency" but a Rule 2004 examination is not a window to the world, or for all time. Here, the creditor—a former business partner and now disappointed state court litigant—wants to examine the debtor, two of debtor's new business partners, a major creditor of debtor, a federal agency, and one of its employees about a contract having nothing to do with a business that movant shared with debtor eleven years ago. For the reasons set forth below, the motion will be denied.

## FACTS

      Creditor Scott Smith seeks to conduct Rule 2004 examinations of the debtor, Gregory Kleynerman, two co-owners of the debtor's company, Red Flag LLC, James Kniestedt and Gregory Grinberg, a major secured creditor of the debtor, Bruce Glaser, the U.S. Customs and Border Protection (Department of Homeland Security), and one of its employees, Gary Orr. Smith seeks these examinations to investigate the circumstances surrounding Red Flag, LLC receiving a government contract, the award of which occurred between Kleynerman's petition date and his discharge date. Smith asserts that this award may lead to (1) a possible action to revoke Kleynerman's discharge under 11 U.S.C. § 727(d) and (2) a possible action for the Chapter 7 case trustee to revoke his April 2019 abandonment of Kleynerman's ownership interest in Red Flag LLC.

Kleynerman and the other two co-owners of Red Flag filed a joint objection, and secured creditor Bruce Glaser filed an objection. They each cite multiple bases to oppose the Rule 2004 examination. The Court set a hearing on the motion for April 20, 2020 but adjourned it until May 18, 2020 because Smith had not served the governmental targets properly. Thereafter, the governmental targets were served properly but did not respond. The Court held the hearing on May 18 and then took the matter under advisement.

*Background*

Smith and Kleynerman have a long history; ultimately it is not a happy one. Beginning in 2002, they operated a business together—Alpha Cargo Technology, LLC (ACT)—supplying cargo security seals for shipping containers. In 2007, Smith's wife was diagnosed with a terminal illness, and ultimately passed away. Smith stepped back from the business. In 2009, he sold his interest in assets of ACT to Kleynerman, who joined forces with Bruce Glaser and Greg Grinberg to form a new company, Red Flag.

At some point, Smith came to dispute details of this chain of events and sued Kleynerman. He sued in state court for intentional misrepresentation and breach of fiduciary duty. He did not prevail on the former but prevailed on the latter (the jury also awarded punitive damages on the former, which the judge struck on motions after). He obtained a judgment of $499,000.00. Smith also did not prevail on his allegation that he was incompetent when he signed the sale transaction documents. Smith pursued an appeal of the misrepresentation verdict,[1] but lost. *Smith v. Kleynerman,* 370 Wis. 2d 786, 882 N.W.2d 870 (Ct. App. 2016) (per curiam) (unpublished).

Primarily because of Smith's judgment against him for breach of fiduciary duty, Kleynerman filed for Chapter 7 bankruptcy on July 9, 2018. *See* ECF Claim Nos. 1-1 and 2-1 (totaling $586,369). Kleynerman filed his bankruptcy schedules identifying his 51% ownership in Red Flag as an asset,

---

[1] Kleynerman appealed the verdict as to breach of fiduciary duty but was not successful. An equally divided state supreme court denied his petition for review. *Smith v. Kleynerman*, 374 Wis. 2d 1, 892 N.W.2d 734 (2017).

and liabilities resulting from business loans owed to Bruce Glaser, totaling $1,177,274[2], and owed to Red Flag, totaling $300,000. ECF Doc. No. 9, at 6, 17, and 18 (respectively). Glaser filed a claim in the bankruptcy case, asserting a debt owed for $450,927.57. *See* ECF Claim No. 3-1.

On October 9, 2018, Smith filed an adversary proceeding, alleging that the judgment debt owed to him should be non-dischargeable under 11 U.S.C. § 523(a)(4) as a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." *See Smith v. Kleynerman*, Case No. 18-02220, AP-ECF Doc. No. 1 at 6–7. After ruling on motions *in limine*,[3] the Court held a trial on March 18, 2019. At the conclusion of Smith's presentation, Kleynerman moved for judgment on the pleadings and the Court dismissed Smith's case. *Smith v. Kleynerman*, Case No. 18-02220, AP-ECF Doc. No. 30. Smith appealed that judgment, but the U.S. District Court dismissed his appeal on May 14, 2019. *Smith v. Kleynerman*, Case No. 18-02220, AP-ECF Doc. No. 35.

*The Rule 2004 Motion*

Over three months after the adversary proceeding case was closed and Kleynerman received his Chapter 7 discharge, but before the bankruptcy case was closed, Smith brought the instant Rule 2004 motion. The motion failed to specify the types of documents requested, beyond the following description:

> [T]he documents and testimony that Smith is seeking via the subpoenas relate directly to, among other things: (a) the debtor's assets, property, liabilities, and financial conditions (*i.e.* the value of Red Flag and the Red Flag equity interest, including the scope and nature of claims against it) and (b) the Debtor's right to a discharge (while the discharge has been granted, the Trustee and parties in interest have one year to seek to revoke the discharge).

ECF Doc. No. 52, at 12.

---

[2] These business loans include eight different debts owed to Glaser – one directly owed by Kleynerman, two owed by Tres Chic Salon, a company owned by Kleynerman's wife but the loan guaranteed by Kleynerman, and five loans taken by Red Flag, again guaranteed by Kleynerman. *See* ECF No.72 fn.1 citing Exs.

[3] *Smith v. Kleynerman (In re Kleynerman)*, No. 18-02220, 2019 WL 1111569, *5 (Bankr. E.D. Wis. March 8, 2019).

Accompanying the motion, Smith filed his own declaration, which purports to recite some business history of ACT and of Red Flag. *Id.*, at Exhibit B. Pertinent for the Court's discussion are the following statements:

> 1. I was a founder and 50% owner of Alpha Cargo Technology LLC ("ACT"), the business now operated by Red Flag Cargo Security Systems LLC ("Red Flag").
>
> . . .
>
> 3. Based on my historical knowledge of ACT n/k/a Red Flag, the business generates an average profit margin in the range of approximately 60% on the upper end and 45% on the lowest end. The profit margin depends on numerous factors, including, amongst others, whether materials are purchased overseas and re-sold, or if they are manufactured locally, and if so, the location of manufacturing.
>
> 4. With respect to the government contract with U.S. Customs & Border Protection/Homeland Security awarded to Red Flag (the "Government Contract"), based on the short time frame between the posting of the opportunity (on August 31, 2018) and the award being granted (September 28, 2018), it appears that Red Flag likely may have known about the likely award well before it was officially posted (even potentially prior to the Petition Date). . . Given the volume of product the government requested, it would have been seemingly difficult for Red Flag to fulfill the . . . order in a timely fashion. . . if Red Flag had not already known about the contract and proactively started preparing to fulfill orders. . .

*Id.* Smith's motion also included a declaration of Paul Rodrigues, who is a senior director of The BERO Group. *Id.*, at Exhibit C. The declaration states that Rodrigues is a CPA, certified in financial forensics. Rodrigues purports to value Red Flag, LLC, using figures that Kleynerman disclosed in his Statement of Financial Affairs, information from the September 28, 2018 government contract, other data regarding Red Flag's imports, and documents that he previously prepared for Smith in the state court proceedings.

As support for their objections to Smith's motions, Kleynerman, Kniestedt and Grinberg filed declarations attesting that they did not know, prior to September 28, 2018, that the government contract would be awarded to Red Flag. ECF Doc. Nos. 62-1, 62-2, 62-3. They assert that one of the advantages Red Flag had in the bidding process for the contract was its status

as a "HUBZone-certified" business, a status to which the federal government gives preferential consideration. *Id.* The declarants also testified that the seals Red Flag is supplying to the government under this contract are based on technology that is different from that described in the patents that ACT sold to Red Flag in 2009. *Id.* Red Flag received its first payment under the contract on March 12, 2019. *Id.*

Kleynerman's counsel filed declarations describing multiple contacts with the Chapter 7 Trustee between June 18, 2019 and September 2019 regarding Red Flag and the debtor's membership interest therein, including limitations on its marketability, and confidentiality of information. ECF Doc. Nos. 62-4, 68.

Just before the original hearing date on this motion, Smith filed a supplement, responding to the targets' objections that Smith failed to identify specific documents or information sought, and providing a list of 25 different categories of documents he seeks. ECF Doc. No. 70. The list includes an array of financial documents sought from both the debtor, and third-party Red Flag LLC and its investors or co-owners:

> Entire native QuickBooks files for Red Flag; all tax returns from 2015 through 2018 for both Red Flag and Kleynerman individually; all tax forms issued by Red Flag to its owners, or received by its owners from Red Flag, including, without limitation, W-2 and K1 forms; all financial statements for Red Flag for 2015 through 2018; all government contracts awarded to Red Flag from 2017 through the present; all documents, including any applications, related to any government contract awarded to Red Flag from 2017 through the present; W-2s for all Red Flag employees from 2015 through 2018; 1099s for all Red Flag contractors from 2015 through 2018; all documents, including security agreements, related to any loan from Glaser to Red Flag; all documents, including security agreements, related to any loan from Glaser to an individual, other than the Debtor, or entity, other than Red Flag, which is secured by Red Flag assets; all patents currently owned by, previously owned by, or applied for by Red Flag from 2015 through 2018; all correspondence between Glaser and Kleynerman related to Red Flag; all documents showing ownership by Kleynerman, Glaser, Grinberg and/or Kniestedt in entities other than Red Flag that produce seals or security products; a list of all individual affiliated with Red Flag; a list of all entities affiliated

> with Red Flag; all documents related to any affiliate entity of Red Flag; all document evidencing any payments from Red Flag to Kleynerman, Glaser, Grinberg, and/or Kniestedt; a list of all current and prior bank accounts belonging to Red Flag; all documents including bank account statements and copies of any cancelled checks, related to any bank account of Red Flag; all documents evidencing and related to any loan to Red Flag; all documents evidencing and related to any loan from Red Flag to Kleynerman, Glaser, Grinberg, and/or Kniestedt.

ECF Doc. No. 70, at 2–3.

## DISCUSSION

Under Federal Rule of Bankruptcy Procedure 2004(a), on the motion of "any party in interest, the court may order the examination of any entity." Such an examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

Smith's motion meets minimum standards required under Rule 2004(a) and (b). A movant party-in-interest may be a creditor. *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). Rule 2004(b) requires that the examination relate only to acts, conduct, or property or to the liabilities and financial condition of the debtor. In his late-filed supplement, Smith has asked for Kleynerman's tax returns, among other things. He also has asserted that Kleynerman's discharge might be subject to revocation, pending fruits of the Rule 2004 examination. Because at least some of the information Smith's motion seeks relates to those identified bases, the threshold requirements of Rule 2004(b) are met.

But that is not the end of the story.

Rule 2004 uses the verb form "may" and thereby affords courts discretion to limit (or preclude) examinations as justice requires. *In re Kearney*, 590 B.R. 913, 921 (Bankr. D.N.M. 2018). Accordingly, courts consider such requests on a case-by-case basis, balancing the examiner's interest against the respondents' interests. *In re Hamond*, 140 B.R. 197, 201 (S.D. Ohio 1992).

Inquiries that seek far-reaching information will require a higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse. *In re Countrywide Home Loans*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008).

Many courts asses a Rule 2004 motion under the "good cause" standard, although that express standard is not found within rule. *In re Handy Andy Home Improvement Ctrs., Inc.*, 199 B.R. 376, 380 (Bankr. N.D. Ill. 1996). The main function of a Rule 2004 exam is to uncover defalcations of the debtor and management of the estate. Courts weigh whether there is some reasonable basis to examine the material sought. In other words, would denial of production cause undue hardship or injustice to movant? *See In re Kearney*, 590 B.R. at 921; *In re Metiom, Inc.*, 318 B.R. 263, 268 (Bankr. S.D.N.Y. 2004).

Here, Smith's requests of not only the debtor, but also third-parties, are far-reaching. The Court could reach that conclusion based solely on the motion because the documents sought are unspecified, and therefore broad in scope. The Court could reach that conclusion also because the examination targets go beyond the debtor himself to the private company in which he has a stake, and to its other co-owners, and to a government entity and its representative, and to a third-party creditor. More recently, in light of the late-filed supplement, the Court could again, but for different reasons, conclude that the requests are far-reaching. The specific documents now sought from third-party Red Flag are voluminous, going back at least four years. Smith has not shown their relevance. His counsel's statement during argument that "if debtor has nothing to hide, there shouldn't be an issue" impermissibly turns the standard, and the burden, on its head. Smith's burden is an affirmative one. *In re Wilcher*, 56 B.R. 428 (Bankr. N.D. Ill. 1998). And because of the far-reaching nature of the requests, there must be a higher showing of good cause.

For example, Red Flag documents from 2015 through 2018 will not show how, if at all, the value of Kleynerman's percentage interest in Red Flag changed from the date he filed this bankruptcy case (July 9, 2018) to the date

of his meeting of creditors (October 4, 2018), or to the date of his discharge (December 12, 2019). Given the significant debt he owes to Glaser and the other corporate entities, and the fact that the Chapter 7 trustee has not rescinded his Statement of Abandonment despite all the undisputed disclosed information, then requiring examination about, or production of Red Flag documents spanning back to 2015, is not reasonable. The same is true for documents sought from Kleynerman, going back to 2015. They are either irrelevant to Smith's stated purposes, or are for documents to which Smith could have had access prior to discharge.

Although the U.S. Customs and Border Protection (Department of Homeland Security) and its employee Gary Orr did not respond to Smith's motion, the Court finds that Smith has not stated good cause to examine either entity. Smith has made no showing that Gary Orr or his employer would be able to provide information likely to show that debtor Kleynerman's 2018 percentage interest in Red Flag, net of his substantial corporate debts, increased to the point where the Chapter 7 trustee could be forced to alter his abandonment decision, or that Kleynerman engaged in fraudulent conduct that would invoke authority for a section 727(d) action. Beyond that, declarants Kniestedt, Grinberg, and Kleynerman already have described the timing of the contract. Their declarations are reinforced by statements of the U.S. Small Business Administration's HUBZone program. *See* "HUBZone program," U.S. Small Business Administration, available at https://www.sba.gov/federal-contracting/contracting-assistance-programs/hubzone-program ("The HUBZone program fuels small business growth in historically underutilized business zones with a goal of awarding at least three percent of federal contract dollars to HUBZone-certified companies each year.").

In addition to assessing whether a Rule 2004 request is made with "good cause," another consideration is whether the request is unduly burdensome. *In re Kearney*, 590 B.R. at 922. Often this factor can be seen as neutral, because the court has the ability to tailor the request. But when the request is placed on a debtor and third-parties for information that could have been acquired

months earlier during normal bankruptcy process, or is information that is likely to be used for improper (*i.e.*, competitive or harassing) purposes, then a court should be circumspect in granting such a request.

Courts also assess whether the motion was brought for an improper purpose, such as to harass or to further a private agenda. *In re Mittco, Inc.*, 44 B.R. at 36. First, with regard to Smith's purpose in examining the third-parties, there can be no fruitful purpose here. Smith's own declaration is framed in speculative terms: equating ACT with Red Flag, when they are separate entities, with different products and employees.[4] Smith's declaration merely supposes a parade of horribles, ("it appears that Red Flag likely may have known;" "it would have been seemingly difficult . . . to fulfill,") while the affidavits of the Red Flag owners flatly refute Smith's conjecture about the timing of the government contract award, and the differentiation of the patents for the products actually supplied. Smith's declaration is not credible.

Similarly, Paul Rodrigues's declaration, purporting to value Red Flag, is grounded on Smith's wishful thinking. The margin information attributed to Red Flag is from Smith's reporting of ACT's margin history. The historical production information appears to be from a preliminary report Rodrigues prepared for Smith's state court suit against Kleynerman. That 2013 reporting is not relevant here, for it sheds no light on whether Kleynerman's 2018 percentage interest in Red Flag, net of his substantial corporate debts, increased to the point where the Chapter 7 trustee should be forced to alter his abandonment decision, or whether any of the third-party targets have any relevant information that Kleynerman engaged in fraud in preparing or amending his schedules during the course of his 2018 bankruptcy that would justify a section 727(d) proceeding.

---

[4] *Compare* ECF Doc. No. 52-2, at 2, where Smith asserts that he was a founder and owner of ACT, "the business now operated by Red Flag . . ." *with* ECF Doc. Nos. 62-1, 62-2, 62-3, where Kleynerman, Grinberg, and Kniestedt all attest that they are familiar with the patents that Red Flag bought from ACT and the cargo seals used now "are based on technology that is different from that described in the patents that ACT sold to Red Flag in 2009."

Next, Smith's purpose in examining the debtor is similarly ungrounded, and suspect. There are multiple indicia that the motion was brought with the purpose to harass Kleynerman. The first is the motion's misstatement of the underlying history of litigation between Smith and Kleynerman. Perhaps that is how Smith himself insists on recalling it, but the Court reminds that lawyers are both counselors and advocates who owe a duty of candor to the court. Smith did *not* prevail on his misrepresentation claims in state court. The court of appeals affirmed that verdict. *Smith v. Kleynerman,* 370 Wis. 2d 786, 882 N.W.2d 870 (Ct. App. 2016) (per curiam) (unpublished). And, to the extent Smith sought to plead and argue those same statements in his adversary proceeding against Kleynerman in bankruptcy, this Court barred him via a motion *in limine* ruling, based on issue preclusion grounds. *See Smith v. Kleynerman (In re Kleynerman),* No. 18-02220, 2019 WL 1111569, *5 (Bankr. E.D. Wis. March 8, 2019).

The speculative nature of Smith's declaration, combined with his through-the-looking-glass mischaracterization of the parties' litigation history, leads the Court to conclude that Smith is using the Rule 2004 motion as a harassment needle.

The Court also may look to whether the movant is the proper representative to bring the Rule 2004 motion. *In re Kearney,* 590 B.R. at 923. If Smith would use this investigation as a pre-litigation tool, the Court should consider, to what end? Could Smith pursue an action to revoke Kleynerman's discharge under 11 U.S.C. § 727(d), based on the government contract awarded to Red Flag?[5] Further, Smith has failed to show standing in his quest to

---

[5] While theoretically Smith may have the requisite standing to bring a subsequent action under § 727(d)—*see Cadle Co. v. Andersen (In re Andersen),* 2011 WL 4571900 (B.A.P. 1st Cir. 2011) (ruling that a creditor's 2004 exam yielded potentially significant newly discovered post-discharge evidence, and the bankruptcy court should have allowed bankruptcy case to be reopened to allow creditor to pursue § 727(d)(1) revocation of discharge proceeding)—the likelihood of Smith actually being able to pursue a revocation action is undercut by *In re Herman,* 737 F.3d 449 (7th Cir. 2013). The *Herman* court explained that § 727(d) relief is appropriate "when the debtor procured his discharge through fraud, and the party requesting revocation did not learn of the fraud until after the discharge was granted." 737 F.3d at 453 (emphasis in original). The *Herman* court found that because the alleged fraud occurred years

reverse the Chapter 7 Trustee's abandonment of Kleynerman's interest in Red Flag. The "authority to collect the debtor's assets is vested exclusively in the trustee . . . A trustee may be divested of this exclusive authority only in narrow circumstances. When (a) the trustee unjustifiably refuses a demand to pursue the action; (b) the creditor establishes a colorable claim or cause of action; and (c) the creditor seeks and obtains leave from the bankruptcy court to prosecute the action for and in the name of the trustee, then may an individual creditor or creditors' committee prosecute an action originally vested in the trustee." *In re Perkins*, 902 F.2d 1254, 1257–58 (7th Cir. 1990) (discussing creditor's improper request for turnover of assets). Here, the Trustee had the information, and the full opportunity, to take any action that Smith now insists be performed. The Trustee compromised several claims and recovered a modest amount of assets for creditors. He implicitly exercised his judgment, based on the information, not to reverse his earlier decisions. The Trustee performed his duties. Smith has not shown any of the narrow *Perkins* circumstances that would allow Smith to act in the Trustee's stead.

Another consideration is whether the movant already has access to the information. As noted above, there has been extensive activity and litigation between Smith and Kleynerman in the past decade. Smith learned of the government contract almost nine months before filing the instant motion, and seven months before debtor received his discharge. Smith employed (re-employed) his valuation witness during the same month that he learned of the contract. Smith had plenty of time and access. His counsel's argument that Smith "moved with due haste" is unpersuasive, and unsupported by the calendar.

---

before the bankruptcy, the movant's claim under § 727(d) failed. Here, Smith has not shown "potentially significant newly discovered post-discharge evidence" or even the possibility of finding such evidence through this Rule 2004 investigation. The evidence of the government contract was available many months pre-discharge, and the rest of the information on which Smith bases his motion was either available years before (and is not relevant now) or is conjectural.

An additional consideration is whether the motion is in the best interest of creditors. Here, while a successful § 727(d) action might grant all creditors rights to recommence action against the debtor, the reality is that the action is likely to fail, given *Cadle* and *Herman*, and unnecessarily expend the parties' resources. Further, other than Smith, Glaser is the next largest secured creditor, and he is one of the targets of the motion. As such, this consideration is barely neutral.

The last aspect that courts usually assess is the timing of the motion. All the objecting parties urge that Smith's timing is suspect. The Court agrees. The fact that Smith (and his expert) had the information about the award of the government contract to Red Flag at least by May 2019, but waited to bring the motion until after the appeal in his adversary proceeding failed, aids in the conclusion that Smith filed the instant motion as part of his continued mission to harass Kleynerman. There can be no "undue hardship" to the movant, when the triggering information was known to him almost a year before making this request. *In re Kearney*, 590 B.R. at 921.

## CONCLUSION AND ORDER

Applying the Court's discretion, and weighing considerations of the broad scope of the request, and commensurate need to meet a high degree of cause, especially for the requests of third-parties, balanced against any undue hardship to Smith, the Court finds that the mischaracterization of the litigation history, the speculative nature of Smith's declaration, the credible nature of the three Red Flag owners' declarations, the questionable lateness of the motion despite Smith's awareness of the contract for at least nine months, and the Court's conclusion that many of the above factors suggest Smith contrived the motion as a harassment device toward debtor in particular, plus the implicit yet informed decision by the Chapter 7 Trustee not to take further action, compels the Court to **DENY** the movant's request for Rule 2004 examinations of the named entities.

It is so **ORDERED**.

Dated: May 25, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge