UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Gregory Kleynerman,                        Case No. 18-26659-beh

              Debtor.                               Chapter 7

**DECISION AND ORDER ON DEBTOR'S MOTION
TO REOPEN AND TO AVOID LIEN**

      This case illustrates the difference between discharge and avoidance. The debtor seeks to reopen his Chapter 7 bankruptcy case pursuant 11 U.S.C. § 350(b) and to avoid the judicial lien placed on his interest in Red Flag Cargo Security Systems, LLC (hereafter "Red Flag") under 11 U.S.C. § 522(f). This motion follows a recent Milwaukee County Circuit Court decision construing Wis. Stat. § 806.19(4)(d) to conclude that the debtor's bankruptcy discharge did not satisfy the charging order/lien against his 51% ownership interest in Red Flag. The Court holds that the debtor has stated a basis to reopen his case because the bankruptcy court can afford him further relief by avoiding the lien, and for the reasons set out below, any prejudicial delay in bringing the motion can be alleviated by requiring the debtor to reimburse this creditor for a portion of his legal fees and costs.

**FACTUAL AND PROCEDURAL BACKGROUND**

      After their business relationship soured almost ten years ago, debtor Gregory Kleynerman, and Scott Smith, his former business partner, became embroiled in several court proceedings. That procedural history includes two separate Milwaukee County Circuit Court cases (Case No. 11-CV-3594 and Case No. 11-CV-18551); two bankruptcy cases (Case No. 12-21614-svk and this case), in the latter of which Kleynerman listed Smith as the creditor to whom he owed the most secured debt, *see* ECF No. 9, at 12–14; and two adversary proceedings in this Court, *see* Adv. No. 12-2314-svk and Adv. No.

18-2220-beh. In state court, Smith had accused Kleynerman of convincing Smith to sell a valuable patent to Red Flag for inadequate consideration. Kleynerman shared an interest in Red Flag with a new business associate, Bruce Glaser. According to Smith, the patent sale occurred at a point when he was emotionally vulnerable. On September 15, 2017 after a jury trial, the Milwaukee County Circuit Court entered judgment against Kleynerman for $499,000. On March 22, 2018, the court granted Smith's application for a charging order, as a means of satisfying the September 2017 judgment. The charging order required Kleynerman to turn over his future distributions and interest in Red Flag to Smith.

On July 8, 2018, Kleynerman filed his second petition for Chapter 7 relief in this Court. Both Smith and Kleynerman treated the $499,000 debt as secured by Kleynerman's home. *See* Claim No. 1-1, at 2; ECF No. 9, at 12–13. Kleynerman scheduled his interest in Red Flag as an exempt asset under Wis. Stat. § 815.18(3)(b), valuing it as $0.[1] *See* ECF No. 9, at 6, 11; ECF No. 37, at 2. Smith filed an adversary proceeding seeking to render the judgment debt non-dischargeable based on 11 U.S.C. § 523(a)(4).[2] But after a trial the Court

---

[1] Wis. Stat. § 815.18(3)(b) provides: "The debtor's interest in or right to receive the following property is exempt, except as specifically provided in this section and ss. 70.20 (2), 71.91 (5m) and (6), 74.55 (2) and 102.28 (5): . . . *Business and farm property.*

   1. Equipment, inventory, farm products, and professional books used in the business of the debtor or the business of a dependent of the debtor, not to exceed $15,000 in aggregate value.

   2. If the debtor does not claim an exemption under subd. 1., any interest of the debtor, not to exceed $15,000 in aggregate value, in a closely held business that employs the debtor or in whose business the debtor is actively involved."

[2] Smith's second adversary complaint, paragraph 25, states: "Smith further received a charging order against all transferable interest of Kleynerman from Red Flag, including all dividends and other non-wage disbursements." Adv. No. 18-2220, ECF No. 1, at 6. Kleynerman's answer to the complaint states: "Refers to the Charging Order entered in the Milwaukee County Circuit Court Case No. 2018-CV-504 for its content and denies any allegations in ¶ 19 of the Complaint to the extent inconsistent with same." Adv. No. 18-2220, ECF No. 4, at 3 (¶ 25). The parties' joint pretrial report states: "As it stands today, Plaintiff is the holder of a valid judgment against Defendant, filed as Claim #1 in the Defendant's Chapter 7 action." Adv. No. 18-2220, ECF No. 19, at 4 (¶ 25). Proof of Claim No. 1-1 states that the claim is secured by real estate and includes a copy of the August 4, 2017 judgment. Smith's first adversary complaint, filed in May 2012, was dismissed by stipulation of the parties and pending resolution of Smith's state court action against Kleynerman. Adv. No. 12-2314, ECF Nos. 19, 20.

dismissed Smith's case on the pleadings. On April 25, 2019, the Chapter 7 trustee filed a statement abandoning the estate's interest in certain property, including its interest in Red Flag, and noting there was $0.00 in lien or security interest in the property. ECF No. 44. Kleynerman received a standard discharge on December 12, 2019, ECF No. 47, although his case did not close until August 5, 2021, ECF No. 109, following Smith's repeated attempts to obtain information from Kleynerman (and others) via motion under Fed. R. Bankr. P. 2004. ECF Nos. 52, 79.

On April 12, 2021, Kleynerman presented his bankruptcy discharge order to the Milwaukee County Circuit Court pursuant to Wis. Stat. § 806.19(4), to support his application for satisfaction of the Smith judgment. ECF No. 112-2 (Exhibit B). Smith objected to the application and filed a motion for declaratory judgment. The state court denied Kleynerman's application, opining in a decision dated September 8, 2021 that Wis. Stat. § 806.19(4) considers a bankruptcy discharge to satisfy judgments only against real property, and the charging order granted Smith an interest in personal property.[3]

## THE PARTIES' ARGUMENTS

The debtor filed this motion to reopen and to avoid Smith's lien on October 14, 2021. He asserts that it was not until March 19, 2021, that Smith first construed the charging order as a judicial lien that rode through the bankruptcy and continued to be enforceable. ECF No. 112, at 2. This communication, Kleynerman argues, along with the subsequent state court

---

[3] Wis. Stat. § 806.19(4) provides, in relevant part:
  (a) Any person who has secured a discharge of a judgment debt in bankruptcy and any person interested in real property to which the judgment attaches may submit an application for an order of satisfaction of the judgment and an attached order of satisfaction to the clerk of the court in which the judgment was entered.
      . . .
  (d) Upon receipt of a completed application, the clerk shall submit the attached proposed order for signature by a judge after which the clerk shall satisfy of record each judgment described in the application. Upon satisfaction, a judgment shall cease to be a lien on any real property that the person discharged in bankruptcy owns or later acquires.

decision denying his application for satisfaction of the judgment, constitute grounds to reopen his bankruptcy case under § 350(b). He contends, relying principally on *Matter of Bianucci,* 4 F.3d 526, 528 (7th Cir. 1993), that Smith is not prejudiced by reopening because he filed this motion only 60 days since his case closed and 36 days since the state court denied his application. ECF No. 112, at 4. Kleynerman further argues that Smith's lien on his interest in Red Flag is of the kind that can be avoided under § 522(f) because it is a judicial lien under § 101(36)[4] which impairs his right to exercise an exemption under § 522(f)(2)(A). *Id.* at 5–6. Kleynerman argues that nothing prohibits lien avoidance because Smith did not challenge his $0 valuation of his interest in Red Flag, or Kleynerman's ability to exempt that interest while the main case was pending. *Id.* at 6–7.

Smith objects, contending that Kleynerman should have avoided the lien in some manner prior to discharge. ECF No. 117, at 1. Procedurally, Smith argues Kleynerman should have sought to avoid the lien through a compulsive counterclaim in the adversary proceeding, citing *In re Adkins,* 7 B.R. 325, 327 (Bankr. S.D. Cal. 1980); *In re Cutty's-Gurnee, Inc.,* 133 B.R. 969, 972 (Bankr. N.D. Ill. 1991); Fed. R. Bankr. P. 7001(2); and Fed. R. Bankr. P. 7013 (incorporating Fed. R. Civ. P. 13). ECF No. 117, at 7–9. Substantively, Smith asserts that because Kleynerman took no steps to avoid the lien while the case was open, equity requires that the motion be denied. *Id.* at 5–6.[5] He concedes that lien avoidance sometimes justifies a motion to reopen, but that reopening

---

[4] 11 U.S.C. § 101(36) provides: "The term "judicial lien" means a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."

[5] Smith also relies on *In re Krahn*, 10 B.R. 770, 771 (Bankr. E.D. Wis. 1981), in asserting that "it is not proper for a debtor to sit back and do nothing in protecting his or her rights, wait for the creditor to take some action and then decide what he wants to do," and that, "[i]f a debtor has not timely filed a complaint to avoid a lien, then he should be barred from doing so." ECF No. 117, at 6. In *Krahn*, the court declined to reopen the debtors' case to allow them to avoid a lien under section 522(f), concluding that "the appropriate method for avoiding liens on exempt property is to file a complaint" under then-existing Bankruptcy Rule 701(3), and that such a complaint must be filed before the discharge is granted. 10 B.R. at 771. *Krahn* is not applicable in light of the promulgation of Federal Rule of Bankruptcy Procedure 4003 in 1983, discussed *infra.*

should not occur in this case because otherwise Smith will suffer prejudice. *Id.* at 6. For example, Smith asserts he has incurred over $100,000 in legal costs to enforce his judgment against Kleynerman since the commencement of the adversary proceeding related this bankruptcy case. *Id.* at 7. Smith submitted invoices reflecting these fees. ECF No. 122. The invoices, some more detailed than others, are broken down by firm and particular aspect of litigation. As shown in Exhibit B to the Smith affidavit, the fees to Goldstein & McClintock LLLP total $65,678.69. ECF No. 122-2. They represent legal work on behalf of Smith between September 5, 2018 and July 28, 2020 during pendency of Kleynerman's main case and in the adversary filed by Smith. Exhibit C reflects fees paid to The BERO Group, which provided Smith with expert witness assistance between May 28, 2019 and May 29, 2020, and total $24,160.96. ECF No. 122-3. Exhibit D contains invoices from Mallery sc f/k/a/ Mallery & Zimmerman S.C. and represents legal efforts between March 15, 2021 and November 30, 2021 to pursue Smith's lien claim in state court after Kleynerman obtained his discharge. They total $14,861.00. ECF No. 122-4. Exhibit E contains the last group of fees, paid to Trace Forensic Experts LLC for expert witness assistance "in determining the value of the Debtor's interest in Red Flag in state court," between October 8 and 13, 2021. Those invoices total $5,000.00. ECF No. 122-5.

## DISCUSSION

11 U.S.C. § 350(b) governs motions to reopen and allows a court to reopen a bankruptcy case to permit administration of assets, to accord further relief to the debtor, or for cause. Courts have broad discretion to grant such a motion. *In re Bianucci,* 4 F.3d at 528. In deciding whether to reopen a case courts consider a range of non-exclusive factors, including (1) the amount of time that has lapsed since the case's closure, (2) whether the debtor could obtain the relief he or she seeks if the motion were granted, and (3) the ability of non-bankruptcy courts to adjudicate the dispute. *Redmond v. Fifth Third Bank,* 624 F.3d 793, 798 (7th Cir. 2010) (affirming denial of motion to reopen

where debtor delayed seven years in bringing the motion, he was not entitled to the relief he sought, and state court was the appropriate forum for his potential claims). Kleynerman seeks to reopen his case so that the bankruptcy court can afford him further relief in the form of lien avoidance.

Courts assess whether too much time has passed before the request to reopen is made, as well as whether there was undue delay in seeking lien avoidance. The passage of time cautions against reopening when it risks prejudice to the nonmovant who has come to rely on the finality of the case closure. A lapse of time does not in and of itself constitute prejudice; rather, the nonmovant must show *how* the passage of time became detrimental. *See Hawkins v. Landmark Finance Co.,* 727 F.2d 324, 327 (4th Cir. 1994). And in some cases, the court can alleviate the prejudicial effect of an order to reopen by requiring the movant to reimburse the nonmovant for his delay-related legal fees. *See Noble v. Yingling,* 37 B.R. 647, 651 (D. Del. 1984) (finding that where debtors filed their lien avoidance action four months after discharge and before case closure, modest execution fees attributed to debtors' delay were not prejudicial; equitable solution was allow the debtors to maintain their lien avoidance action while requiring debtors to pay those costs)*; In re Parker*, 64 B.R. 402, 404 (Bankr. M.D. Fla. 1986) (conditionally granting debtor's lien avoidance motion by requiring debtor to pay creditor its costs in pursuing a post-discharge replevin action in state court, where debtor waited three and one-half months after discharge to seek to avoid the lien); *In re Beshensky,* 68 B.R. 452, 455 (Bankr. E.D. Wis. 1987) (requiring debtor to reimburse costs where debtor sought to reopen case almost a year after closure to amend schedules to correct mistaken address of creditor, while creditor had incurred collection expenses); *cf. Bianucci,* 4 F.3d at 528–29 (finding two-year delay that caused the creditor to incur foreclosure costs was sufficient basis to deny motion to reopen).

Likewise, the passage of time before a debtor seeks to avoid a lien is not *per se* prejudicial. *See e.g., In re Quackenbos,* 71 B.R. 693, 695 (9th Cir. BAP

1988) (noting policy and legislative history cautions against imposing a firm deadline to avoid liens under § 522(f)); *Hawkins,* 727 F.2d at 327 (same).

Motions to reopen usually are filed "in order to take care of some detail that was overlooked or left unfinished at the time the case was closed." *In re Bartlett,* 326 B.R. 436, 438 (Bankr. N.D. Ind. 2005). Here, it is only now that the parties expressly have raised the three-year-old charging order in this Court.[6] It is also the first time Smith or Kleynerman has actively treated the state court judgment debt as anything other than one secured by a lien on Kleynerman's home. *See* ECF No. 9, at 12; Claim No. 1-1. On his proof of claim, Smith listed his judgment against Kleynerman as secured by a lien on the debtor's home, rather than checking the box indicating the lien was secured by "other" property.[7] Claim No. 1-1, at 2.

Smith devotes a significant portion of his argument to Kleynerman's failure to avoid the lien while his bankruptcy case was open. Smith asserts: "Here, equity demands that Kleynerman's [m]otion should be denied because Kleynerman had notice of Smith's [j]udgment and the lien created by the [c]harging [o]rder on March 22, 2018." ECF No. 117, at 6. Smith then highlights the underlying facts supporting his state court judgment. *Id.* at 1–5. Those facts are unhelpful because Smith's description of them falls outside the section 350(b) bases to reopen (*i.e.,* administering assets, affording further relief to debtor, or other cause), and those facts are not pertinent to the formulary in section 522(f) for lien avoidance.

Specifically, a lien may be avoided to the extent that it impairs the ability of a debtor to claim the exemptions afforded to him by 11 U.S.C. § 522(b). 11 U.S.C. § 522(f). A lien impairs an exemption if the debtor's interest in a property is less than the combined value of the subject lien, all other liens

---

[6] The adversary complaint mentions the existence of a charging order, *see* Adv. No. 18-2220, ECF No. 1, at 6 (¶ 25), but a copy of that order was not included in the trial exhibits, nor was its scope a subject of contention between the parties during pendency of the main case or the adversary proceeding.

[7] Notably, the Chapter 7 trustee also construed Kleynerman's debt to Smith as secured by a lien on Kleynerman's home.

attaching to the property, and the amount of the exemption the debtor could claim if there were no liens on the property. 11 U.S.C. § 522(f)(2)(A).

The judicial lien on Kleynerman's interest in Red Flag remains eligible for avoidance under the formula described in § 522(f)(2)(A).[8] The Chapter 7 trustee estimated the value of Kleynerman's interest in Red Flag at $0. *See* ECF No. 38, at 2; ECF No. 44, at 1. Smith did not object to that valuation.[9] The parties agree that the only lien against that interest is Smith's and Smith does not dispute that Kleynerman exempted his interest in Red Flag under Wis. Stat. § 815.18(3)(b)(2). The maximum amount allowed under this exemption is $15,000. That makes the exemption amount ($15,000) plus the lien amount ($499,000.00) greater than the value of Kleynerman's interest ($0). The judicial lien may be avoided in its entirety according to the impairment calculation of § 522(f)(2)(A).

Smith does not argue to the contrary. Instead, he raises procedural deficits as a basis to deny both reopening Kleynerman's case and voiding the

---

[8] 11 U.S.C. § 522(f) provides:
>  (1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>     (A) A judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5); . . .
>                              . . .
>  (2) (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of-
>       (i) the lien;
>       (ii) all other liens on the property; and
>       (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>     exceeds the value that the debtor's interest in the property would have in the absence of any liens.

[9] Subsequent increases in value will not alter this analysis because "the petition date is the operative date to make all § 522(f) determinations." *In re Salanoa,* 263 B.R. 120, 123 (Bankr. S.D. Cal. 2001); *In re Meyers*, 616 F.3d 626, 628 (7th Cir. 2010) (stating that under § 541, "the time of the petition (the 'commencement of the case[ ]') is the key point for identifying the assets of the estate"). This cut-off requirement moots Smith's argument that subsequent distributions from Red Flag to Kleynerman force a higher value. Smith made a similar argument in his unsuccessful motion for a Rule 2004 examination. ECF No. 52.

judgment lien/charging order. Smith contends that liens must be avoided in adversary proceedings, citing *In re Adkins,* 7 B.R. at 327, and Federal Rule of Bankruptcy Procedure 7001(2). But that contention falls, because *Adkins* was decided under *former* Bankruptcy Rule 701 (not Bankruptcy Rule 7001) and before the 1983 adoption of the federal bankruptcy rules issued under the Bankruptcy Act of 1978—including Bankruptcy Rule 4003. Rule 4003(d) expressly requires a request to avoid a lien under § 522(f) be "commenced by motion in the manner provided by Rule 9014."[10] Rule 9014, in turn, prescribes how to pursue contested matters generally. Contrary to Smith's assertion, the Bankruptcy Rules *do* allow a party to avoid a lien by way of a motion. For the same reasons, Smith's related argument that Kleynerman was required to assert his lien-avoidance action as a compulsory counterclaim in Smith's adversary proceeding is without merit.

Smith also asserts that he has suffered prejudice from Kleynerman's delay in seeking to avoid his judicial lien, pointing to legal fees he has incurred since Kleynerman answered Smith's complaint in the adversary proceeding. The invoices Smith supplied to the Court reflect that his attorneys spent the bulk of their time pursuing theories of nondischargeability: (1) the adversary proceeding and appeal, initiated October 9, 2018, (2) the Rule 2004 motion filed February 25, 2020, and (3) the motion to reconsider denial of the Rule 2004 motion filed June 8, 2020. It was this same Rule 2004 motion that resulted in the delayed closure of the bankruptcy case. Smith's discovery motion, contested by its targets, effectively delayed case closure and implicitly delayed Kleynerman's motion to reopen.

Considering this procedural history, any prejudice to Smith is not of the quantum contemplated in *Bianucci,* where the debtors waited two years to file their motion to reopen. 4 F.3d at 527. Here, as already noted, Kleynerman

---

[10] Bankruptcy Rule 7001(2), which Smith cited in his objection, expressly excepts such lien-avoidance motions from the definition of adversary proceedings, which include "a proceeding to determine the validity, priority, or extent of a lien or other interest in property, *but not a proceeding under Rule 3012 or Rule 4003(d)*." Fed. R. Bankr. P. 7001(2) (emphasis added).

waited fewer than 60 days after his case was closed and 36 days after the state court decision construing the charging order. Kleynerman acted quickly enough. Moreover, fees for Smith's unsuccessful adversary and Rule 2004 motion(s) could not represent prejudice, because those undertakings were not related to Smith's current effort to recover under the charging order/lien.[11] *See In re Vaske,* 339 B.R. 489, 492 (Bankr. N.D. Iowa 2006) (finding that bank was not prejudiced when debtor filed his motion to reopen and to avoid lien 13 months after his bankruptcy case was closed, where bank had not tried to foreclose or start a replevin action).

To summarize, the Court finds that the first two *Redmond* considerations—(1) the length of time that the case has been closed and (2) whether the debtor would be entitled to relief if the case were reopened—weigh in favor of reopening this case.

The third factor to consider is the availability of nonbankruptcy courts, such as state courts, to entertain the debtor's claims. Here, the debtor's only other option to obtain the relief he seeks is through Wis. Stat. § 806.19(4), and that door has been closed (pending appeal). The Wisconsin Supreme Court in *Megal Dev. v. Shadof,* 2005 WI 151, ¶ 32, cited *In re Spore,* 105 B.R. 476, 485 (Bankr. W.D. Wis. 1989), to say: "Reading § 806.21 in conjunction with § 806.19(4), and in light of Wisconsin's long history of providing a mechanism for extinguishing judgment liens after bankruptcy, the *Spore* court concluded that Wisconsin law 'provide[s] the legal basis and the legal means for debtors discharged in bankruptcy to void liens surviving bankruptcy.'" This factor, too, weighs in favor of reopening. In the circumstances, Kleynerman has

---

[11] Smith asserted in his motion for a Rule 2004 examination that the value of Red Flag, and therefore the value of debtor's interest in it, had likely increased due to a federal contract Red Flag obtained at some point after the debtor filed his petition. Smith's motion implied that the Chapter 7 trustee should not have abandoned the debtor's interest in the company and that a Rule 2004 investigation would yield a basis to revoke the debtor's discharge. *See* ECF No. 52. The motion for reconsideration, ECF No. 81, made the same arguments and added that some pre- and post-petition patent applications supported the request relief. The Court denied both motions, neither of which mentioned the charging order/lien. ECF Nos. 79, 91.

established a basis to reopen his case under § 350(b), and the Court will grant the request.

Likewise, Kleynerman has demonstrated that he is entitled to avoid Smith's judicial lien under section 522(f) in its entirety, based on the formulary set forth in section 522(f)(2)(A). As noted above, Kleynerman's valuation of his interest in Red Flag as of the petition date—$0—is less than the amount of Smith's charging order/lien plus Kleynerman's $15,000 exemption under Wis. Stat. § 815.18(3)(b)(2). Consequently, the Court also will grant the debtor's motion to avoid Smith's charging order/lien under § 522(f)(1)(A).

This brings the Court to one final issue: Smith's costs and attorneys' fees. Although Smith argued that his legal fees and costs should be considered as part of the prejudice analysis to deny reopening, the cases he cites largely address situations where the court granted the request to reopen conditioned on allowing the creditor some reimbursement for fees and costs (unnecessarily) incurred to enforce its lien. *See* ECF No 117, at n.3, citing *In re Beshensky*, 68 B.R. at 455; *In re Parker*, 64 B.R. at 404; and *Noble v. Yingling*, 37 B.R. at 651. Here, the Court finds that both Smith and Kleynerman contributed to the delay in bringing the motion for lien avoidance, primarily because until March 2021, they both represented to this Court that Smith's judgment was secured by only the debtor's homestead.

The Court has reviewed Smith's documentation of counsel fees, *see* ECF No. 122, and considers that only the Mallery sc f/k/a Mallery & Zimmerman S.C. invoices represent services related to enforcement of the charging order/lien. The Mallery firm began its work March 15, 2021, just prior to sending a letter to Red Flag on behalf of Smith, claiming that the charging order created a lien against Kleynerman's membership interest in the company, and that such lien 'rode through' the bankruptcy case. Those fees total $14,861.00. Exhibit E includes the invoices from Trace Forensic Experts, and reflects services performed in October 2021 at the request of the Mallery firm. The October 13, 2021 affidavit of Paul Rodrigues from Trace, ECF No 117-1, at 34–37, describes his work (following the state court's September 8, 2021

decision), to analyze the draws that Kleynerman derived from Red Flag between 2018 and 2020. The Trace invoices total $5,000.00 and relate to Smith's efforts to enforce the charging order/lien, days prior to the debtor filing his motion to reopen and to avoid the lien. Applying the rationale of *Noble, Parker* and *Beshensky*, as recognized by the Seventh Circuit in *Bianucci*, 4 F.3d at 528–29, the Court finds that Smith should be reimbursed in the amount of $19,861.00 for his, albeit unsuccessful, efforts to enforce the charging order/lien.

## CONCLUSION AND ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that the debtor's motion to reopen his bankruptcy case is GRANTED.

IT IS FUTHER ORDERED that the debtor's motion to avoid Smith's judicial lien is conditionally GRANTED. The judicial lien of Scott Smith on the debtor's interest in Red Flag Cargo Security Systems, LLC, by virtue of the March 22, 2018, Charging Order entered in Milwaukee County Circuit Court Case No. 11-CV-18551, is avoided in its entirety pursuant to 11 U.S.C. § 522(f)(1)(A).

IT IS FURTHER ORDERED that, as a condition of avoiding Smith's lien, Kleynerman must pay costs and attorneys' fees incurred by Smith in his post-March 2021 efforts to recover on the charging order/lien, and shall reimburse Smith **$19,861.00**, payable within **45 days from the date this order is entered**. In addition, no later than **March 18, 2022**, Kleynerman must file a declaration conforming to 28 U.S.C. § 1746 stating that he has reimbursed Smith as required by this order. After receipt of a satisfactory declaration from Kleynerman, the Court will close this case again.

Dated: January 26, 2022

By the Court:

Beth E. Hanan
United States Bankruptcy Judge